# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| In the Matter of: | |
| WALDRUP PHOTOGRAPHY, INC. d/b/a LARRY WALDRUP PHOTOGRAPHY | CASE NO. 12-81589-JAC-7 |
| | CHAPTER 7 |
| Debtor(s). | |
| HAROLD W. MOTTER d/b/a COLOR XPRESS | A.P. No. 12-80089-JAC-7 |
| Plaintiff(s), | |
| v. | |
| WALDRUP PHOTOGRAPHY, INC. d/b/a LARRY WALDRUP PHOTOGRPAHY, WALDRUP STUDIO & DESIGN, LLC, AND KRISTI W. MCHUGH | |
| Defendant(s). | |

**MEMORANDUM OPINION**

On September 24, 2012, this case came before the Court for hearing on pre-trial conference and for hearing on motion by defendants, Kristi McHugh and Waldrup Studio & Design LLC, to dismiss case against them.

The plaintiff, Color Xpress, is a creditor in the bankruptcy proceeding secured by a judgment obtained in the Circuit Court of Madison County, Alabama on February 2, 2012 in the amount of $71,820.05. The complaint sets forth that the debtor had contracts for printing yearbooks with several local schools. The debtor subcontracted the printing, binding, and delivery work for the yearbooks to plaintiff. The complaint alleges that the debtor received payment from several schools for the work subcontracted to plaintiff and that the debtor in turn failed to pay plaintiff. The

complaint contains the following counts: (1) Count I seeks dismissal of the bankruptcy case pursuant to § 727(a)(2), (4), (5) and (7); (2) Count II seeks an order setting aside the alleged fraudulent conveyance of certain assets from the debtor to co-defendants; (3) Count III seeks judgment against Waldrup Studio & Design, LLC based on successor corporate liability; and (4) Count IV seeks an order piercing the corporate veil and holding Kristi McHugh liable for the corporate debts as the owner and president of both the debtor and Waldrup Studio & Design, LLC.

The defendants maintain that this Court is without jurisdiction to entertain the relief requested by plaintiff in counts two through four pursuant to the Supreme Court case of *Stern v. Marshall*, 131 S. Ct. 2594 (2011) because the claims assert state law causes of action. To the extent the plaintiff's claims are otherwise related to the bankruptcy proceeding, the district court has subject matter jurisdiction and the bankruptcy court can still submit proposed findings of fact and recommendations of law to the district court. However, to the extent the plaintiff seeks relief against non-bankrupt defendants the Court finds that it is doubtful that the complaint is even related to the bankruptcy proceeding. Hence there would be no benefit to the estate and the Court elects to abstain to allow the plaintiff to proceed against the non-bankrupt defendants elsewhere.

The Court further finds that the complaint is due to be dismissed pursuant FED. R. CIV. P. 12(b)(6) for failure to state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The Court will begin its analysis of the complaint with a review of *Twombly* and its progeny:

**(i) Plausibility Standard**: ***Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)(Souter, Roberts, C.J., Scalia, Kennedy, Thomas, Bryer and Alito, JJ.):** Plaintiffs, subscribers of local telephone and high speed internet services, filed an antitrust complaint against

2

certain regional telecommunications providers alleging that the defendants violated § 1 of the Sherman Act which prohibits "[e]very contract, . . . , or conspiracy, in restraint of trade or commerce."

Plaintiffs alleged that the defendants: (1) conspired with one another by engaging in parallel conduct in their respective service areas to inhibit the growth of upstart local exchange carriers; and (2) agreed to refrain from competing against one another based on defendants' common failure to meaningfully pursue business opportunities in contiguous markets.

The district court dismissed the complaint for failure to state a claim upon which relief could be granted pursuant to FED. R. CIV. P. 12 (b)(6) finding that the allegations of parallel business conduct, taken alone, were not sufficient to state a claim under § 1 of the Sherman Act. The district court explained that the complaint needed to allege additional facts that would exclude independent, self-interested conduct as an explanation for defendants' parallel behavior. The Second Circuit reversed finding that under the existing precedent of *Conley v. Gibson*, 355 U.S. 41 (1957) a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. In *Conley*, Justice Black stated that a "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 560 (quoting *Conley,* 355 U.S. at 45-46).

The *Twombly* decision reversed and retired the "no set of facts" pleading standard. The Court explained that courts have read *Conley* so narrowly that "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 561. Accordingly,

the Supreme Court determined that the no set of facts pleading standard established in *Conley* "is best forgotten . . . ." *Id.* at 564. Dismissal for failure to state a claim upon which relief may be granted does not require appearance, beyond a doubt, that the plaintiff prove no set of facts in support of his claim that would entitle him to relief.

Instead, a complaint must contain "enough facts to state a claim to relief that is **plausible** on its face." *Id.* at 570(emphasis added). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions . . . ." *Id.* at 555. "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* The Court further explained that while the plausibility standard is not a "probability requirement," the standard does call "for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the plaintiff's claim. *Id.* at 556. When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570.

In an antitrust case, the need at the pleading stage for allegations plausibly suggesting defendants' alleged agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to show that the pleader is entitled to relief. Without some factual enhancement that suggests a meeting of minds, the complaint stops short of the line between **possibility** and **plausibility**. It is only by taking care to require allegations that reach the level suggesting conspiracy that courts can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal evidence to support a plaintiff's claim.

4

Here nothing in the complaint intimated that the defendants' resistance to upstart companies was anything more than the natural, unilateral reaction of each defendant intent on keeping its regional dominance. Reversing the Second Circuit, the Supreme Court explained that "conscious parallelism," which is a common reaction of firms in a concentrated market that recognize their shared economic interests and their interdependence with respect to price and output decisions, is not itself unlawful. The complaint's general collusion premise failed to answer the point that there was no need for joint encouragement to resist competition since each defendant had reason to try and avoid dealing with the plaintiffs and would have tried to keep them out regardless of what other defendants were doing.

Plaintiffs' second conspiracy theory rested on the defendants' unwillingness to enter into one another's territories, thereby leaving the market highly compartmentalized geographically with minimal competition among the defendants. This parallel conduct did not, however, suggest conspiracy. Because the defendants were born in an era when monopolies were the norm in the telecommunications world, it could be easily explained that the formerly government sanctioned monopolies were simply sitting tight and expecting their neighbors to do the same.

**(ii) Application of Twombly to All Civil Actions: *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)(Kennedy, Roberts, C.J., Scalia, Thomas and Alito, JJ.)**: In this case, the Supreme Court explained that *Twombly's* new pleading standard applies to all civil actions because it is an interpretation of FED. R. CIV. P. 8.

Following the September 11, 2001 terrorist attacks, the FBI and Immigration and Naturalization Service arrested Iqbal on charges of fraud and conspiracy to defraud the United

States. Iqbal pleaded guilty to the criminal charges, served a term of imprisonment, and was then sent back to his native Pakistan. After his release, Iqbal, a citizen of Pakistan and a Muslim, sued Ashcroft, the former Attorney General of the United States, and the Director of the FBI. Iqbal alleged that the defendants adopted and implemented a detention policy for persons of high interest following 911 under which plaintiff was detained based on race, religion, or national origin in violation of the First and Fifth Amendments.

The district court, relying on the no set of facts pleading standard, denied defendants' motion to dismiss. The Second Circuit affirmed even though it found that the no set of facts rule established in *Conley v. Gibson*, 355 U.S. 41 (1957) no longer applied and had been retired by *Twombly*. Nonetheless, the Second Circuit found that the complaint contained sufficient factual allegations which, if true, violated the constitution.

The Supreme Court reversed. The Supreme Court has previously recognized an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights. *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). Because vicarious liability for the actions of subordinates is inapplicable to *Bivens* actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. Specifically, Iqbal had to plead that the defendants adopted and implemented the detention policies at issue not for a neutral, investigative reason but for the purpose of discriminating on account of race, religion, or national origin.

Under Rule 8(a)(2), a claim has facial plausibility as required by *Twombly* when the facts plead allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The Supreme Court explained that *Twombly's* plausibility standard "is not akin to a

6

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. If a complaint "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 127 S. Ct. 1955).

Applying *Twombly*, the Supreme Court held as follows:

> (1) When considering a motion to dismiss, a court must assume as true the facts alleged in a complaint, but the court does not have to assume legal conclusions as true.
>
> (2) Even assuming the facts plead as true, a court must determine whether the facts would also support legal conduct as opposed to unlawful conduct.

Applying these principles, the Supreme Court eliminated the legal conclusions, e.g. Ashcroft was the architect of a discriminatory policy, and then took the remaining allegations and found that while they could support perhaps a discriminatory policy, the alternative inference that the allegations could support a legal policy, i.e. to detain illegal aliens with potential connections to terrorists, was equally compelling.

**(iii) Simple Recitation of Elements of a Cause of Action Will Not Suffice:** *Lubin v. Skow (In re Integrity Bancshares, Inc.),* **382 Fed. Appx. 866 (11th Cir. 2010)(Birch, Martin and Fay, JJ.)(*not selected for publication*).** In this action, the Eleventh Circuit affirmed the district court's dismissal of the trustee's complaint against the officers of both the debtor and the debtor's failed subsidiary bank. The court of appeals explained that a simple recitation of the elements of a cause of action in a complaint will not suffice.

7

The trustee's complaint alleged that the officers caused, authorized, approved, and ratified or otherwise allowed the debtor's subsidiary bank to persist in a deficient condition and to exercise unsound business practices. The complaint further alleged that the officers failed to exercise that degree of care and competence required by ordinarily prudent persons holding similar positions under similar circumstances.

The court of appeals found that the complaint simply recited the elements of breach of fiduciary duty in the **"unadorned, the defendant-unlawfully-harmed-me"** manner. *Integrity Bancshares, Inc.,* 382 Fed. Appx. at 873. While the losses of the bank were staggering, the court of appeals concluded that the complaint's simple recitation of the amount of losses together with generalized statements of blame failed to state a legal claim for breach of fiduciary duty owed to the debtor.

**(iv) Heightened Pleading Standard for Claims of Fraud or Mistake:** *American Dental Assoc. v. Cigna Corp.*, **605 F.3d 1283 (11th Cir. 2010)(Dubina, C.J., Fay and Albritton, JJ.):** In this case, a group of dentists sued several insurance companies alleging that the insurers were violating RICO by downcoding the dentists' insurance claims and, thus, short changing the dentists. The district court dismissed plaintiffs' claims finding that the RICO claims were deficiently alleged.

The Eleventh Circuit affirmed finding that following *Twombly* "a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" explaining that the *Twombly* standard "'calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' of the claim." 605 F.3d at 1289 (quoting *Twombly,* 550 U.S. at 570). The Eleventh Circuit also found it important that the Supreme Court held in both *Twombly* and *Ascroft v. Iqbal* 129 S.Ct. 1937 (2009) "that courts may infer from the factual

8

allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.*

In addition to these general principles, the Eleventh Circuit explained that claims for fraud or mistake require a heightened pleading standard. "[I]n alleging fraud or mistake, a party must state with **particularity** the circumstances constituting fraud or mistake." *Id.* at 1291 (emphasis added). Specifically, pursuant to FED. R. CIV. P. 9(b) a plaintiff must allege:

> (1) the precise statements, documents, or misrepresentations made;
>
> (2) the time, place, and person responsible for the statement;
>
> (3) the content and manner in which the statements misled plaintiffs; and
>
> (4) what the defendants gained by the alleged fraud.
>
> *Id.*

Here, the plaintiffs alleged that they performed multiple procedures that should have been processed and paid individually which would have resulted in larger benefit payments had defendants not bundled and downcoded the procedures into fewer claims. The Eleventh Circuit found that plaintiffs' complaint failed to plausibly or particularly allege a pattern of racketeering activity predicated on a scheme to commit acts of mail and wire fraud.

The closest plaintiffs came to alleging a specific instance of fraud was the allegation that defendants sent Explanations of Benefits documents to plaintiffs that automatically bundled X-ray procedures with other procedures. The Eleventh Circuit explained that this allegation, however, was at most an allegation of possible parallel conduct without any allegation of an agreement as to how defendants would process x-ray billing codes as part of a greater scheme. The parallel conduct could

9

just as easily have been a legal practice. Accordingly, the complaint did not plausibly, under *Twombly,* or particularly, under Rule 9(b), allege a pattern of racketeering.

After reviewing these decisions, it is now the Court's task to determine whether the plaintiff has stated a claim to relief that is plausible on its face. In Count I of the complaint, the plaintiff seeks to have the debtor's bankruptcy case dismissed pursuant to § 727(a)((2), (4), (5) and (7). Plaintiff avers that the debtor and defendants engaged in a pattern of fraudulent conduct, that the defendants transferred, removed, destroyed, or concealed property of the debtor, and that the debtor made a false oath or failed to satisfactorily explain the loss of assets. The complaint alleges that the plaintiff invoiced the debtor from July 12, 2010 to February 18, 2011 for good and services provided to it on an open account in the amount of $70,238.82 and that the debtor was paid by various local school for the subcontract work performed by the plaintiff, but the debtor failed in turn to pay the plaintiff. According to the complaint, the defendant Kristi McHugh testified at the debtor's § 341 meeting that during the subject time period the debtor paid everything received from the schools to the plaintiff and took a loss. The only transaction during the relevant time period that the defendant specifically alleges the debtor received and failed to pay the plaintiff was a $10,200 payment received from one elementary school in August of 2010. The allegations, accepted as true, are not sufficient to state a claim to relief that is plausible on its face. The debtor filed for bankruptcy relief on May 16, 2012, almost two years after it is alleged that the debtor received the August 2010 payment at issue. The facts as alleged do not plausibly under *Twombly,* or particularly under FED. R.CIV. P. Rule 9(b) to the extend plaintiff claims fraud, support a finding that the defendants engaged in a pattern of fraudulent conduct, that the defendants transferred or concealed property of the debtor within one year before the filing of the petition in violation of § 727(a)(2)(A)

10

and (a)(7), or that the debtor made a false oath or has failed to satisfactorily explain the loss of assets in violation of § 727(a)(4) and (5).

In Count II of the complaint, the plaintiff seeks an order setting aside the alleged fraudulent conveyance of certain assets from the debtor to the co-defendants. The complaint alleges that on January 11, 2012, the defendant Kristi McHugh, with full knowledge of the plaintiff's pending state court lawsuit against the debtor, established a new business known as Waldrup Studio & Design, LLC which operates out of the same location as the debtor and that the new business is engaged in the same trade as the debtor. The complaint alleges that McHugh admitted at the debtor's § 341 meeting that the new company uses the debtor's equipment to fulfil contracts with clients that the debtor used to serve. The complaint alleges that McHugh formed the new company in January of 2012 with the intent to file bankruptcy on behalf of the debtor as soon as the debtor's existing contracts expired so that new contracts could be signed with the new company. The complaint further alleges that the new company relies on the debtor's goodwill taking advantage of the debtor's good name going back to 1961. Attached to the complaint is a copy of the website for defendant Waldrup Studio & Design, LLC, the new company formed by McHugh in January of 2012. The website explains that the debtor was formed by McHugh's father, Larry Waldrup, in 1961, that Mr. Waldrup retired in 2000, that McHugh took over the family business until May of 2012 when she was joined by her husband and they formed Waldrup Studio & Design, LLC.

The Court finds that the conduct alleged in Count II does not contain sufficient factual allegations to state a claim to relief that is plausible on its face, nor does the complaint state the allegations with sufficient particularity to the extent the plaintiff asserts allegations of fraud. As recognized in *American Dental Assoc. v. Cigna Corp.*, 605 F.3d at 1289, the bankruptcy court may

11

Case 12-80089-JAC    Doc 13    Filed 09/26/12    Entered 09/26/12 16:32:18    Desc Main
Document      Page 11 of 13

infer from the factual allegations "'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." While the factual allegations could perhaps support an action under § 544 for fraudulent transfer or § 548 for fraudulent conveyance, the alternative inference that the allegations could support a legitimate business decisions to cease doing business under one corporate name while forming a new business entity when McHugh's husband joined the business is equally compelling.

Alternatively, the Court finds that the plaintiff lacks standing to assert a fraudulent transfer action under § 548(a)(1) which reads "[t]he **trustee** may avoid any transfer .. . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition," nor under § 544 which reads "[t]he **trustee** . . . may avoid any transfer of property of the debtor. . . ." [emphasis added] The debtor's Chapter 7 trustee has not filed a final report in this case and it is the trustee's prerogative to determine whether to pursue such causes of action for the benefit the estate.

In Counts III and IV, the complaint alleges that the defendant Waldrup Studio & Design, LLC should be held liable for the debts of the debtor under the theory of successor corporate liability; and that the corporate veil should be pierced to hold Kristi McHugh personally liable for the corporate debts. In Count III, the complaint cites case law stating when a successor corporation can be held liable for the liabilities of a predecessor and then makes a generalized conclusion that it is clear from the facts that Waldrup Studio & Design, LLC should be held liable for the judgment debt owed by the debtor to plaintiff. The complaint alleges no additional facts to support its argument that Waldrup Studio & Design, LLC should be held liable under a theory of successor liability other than the plaintiff's general conclusion that Waldrup Studio & Design, LLC was

12

established for the purpose of continuing the debtor's photography business without the liability of its predecessor. In Count IV, the complaint alleges McHugh has commingled the assets of the debtor and Waldrup Studio & Design, LLC with her own personal assets because certain assets owned by McHugh individually are listed on the debtor's petition as assets and certain personal debts of McHugh are listed in the debtor's schedules. The Court finds that the facts alleged do not state a claim to relief that is plausible on its face. As explained in *In re Wallis*, 2011 WL 2357365 at *12 (Bankr. N.D. Ala. 2011), the mere domination or control of a corporation by its stockholders is not "enough to allow a piercing of the corporate veil. The stockholders must have misused that control and harm or loss must have resulted from it." The fact that certain assets and debts of the sole owner of the debtor, a closely held corporation, may have been inadvertently listed on the debtor's schedules does not state a claim for relief that nudges the plaintiff's "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Accordingly, the above styled complaint is hereby dismissed on the grounds that the complaint fails to set forth enough facts to state a claim to relief that is plausible on the face of the complaint.

A separate order will be entered consistent with this opinion.

DONE and ORDERED **this date: September 26, 2012.**

> **/s/ Jack Caddell**
> **Jack Caddell**
> **United States Bankruptcy Judge**